FILED IN CHAMBERS
U.S.D.C. Atlanta

MAR 01 2006

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RICHARD BODRICK,

        Plaintiff,

    v.

BELLSOUTH BUSINESS SYSTEMS,
INC.,

        Defendant.

CIVIL ACTION

NO. 1:05-CV-0663-RLV

O R D E R

The plaintiff, a former employee of BellSouth Telecommunications, Inc., ("BellSouth"), alleges that BellSouth violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, by interfering with his ability to obtain FMLA leave and by improperly retaliating against him for applying for FMLA leave.[1] Pending before the court is BellSouth's motion for summary judgment [Doc. No. 27].[2]

_____

[1] In the Original Complaint, the plaintiff also alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.  However in footnote 1 of the plaintiff's brief in opposition to BellSouth's motion for summary judgment, he "concedes to the dismissal of his Americans with Disabilities Act claims."  Therefore, the court will address only the plaintiff's FMLA claims in this order and deems the plaintiff's ADA claims voluntarily dismissed.

[2] BellSouth recently submitted a reply brief [Doc. No. 34].  The court considered the arguments contained within BellSouth's reply brief.  However, the court found BellSouth's arguments

## I. Background and Procedural History

The following facts are gleaned from the court's review of the record, the parties' submissions, and the briefs submitted by the parties.  The plaintiff, Richard Bodrick, began his employment as a Multi-Media Technician with BellSouth in June 1999.

BellSouth's stated policy on attendance is as follows:

> BellSouth has no program for planned absences and does not have a certain number of days set aside for each employee as sick days.  The Company expects employees to be at work every scheduled day.  Good attendance is a job requirement employees are expected to meet just as they meet other job requirements.[3]

In addressing attendance and punctuality problems of its employees, BellSouth follows a progressive discipline policy, which consists of (1) an informal discussion or counseling, (2) a formal counseling, (3) a warning, (4) a letter in lieu of suspension, and (5) discharge.  BellSouth also had an Employee Assistance Program ("EAP") which is "designed to provide counseling services to

_____

contained in its reply brief unpersuasive.

[3] BellSouth's "Attendance and Punctuality Guidelines" further provides:

> The management of the Company has the duty and responsibility to keep a constant and reliable work force at all times, regardless of how compassionate a person may feel toward an ill or injured employee.  Once it has been determined that an employee cannot meet the attendance requirements of the job on a continuing basis due to illness, injury, or for other reasons, immediate steps must be taken to address the situation which may lead to dismissal of the employee.

2

employees, at all levels, in dealing with personal problems which are a concern to them and which may affect job performance." BellSouth's "Attendance and Punctuality Guidelines" recognizes FMLA leave; however, BellSouth's "Attendance and Punctuality Guidelines" do not describe the procedure by which employees apply for FMLA leave.   Automated Data Processing ("ADP") acts as BellSouth's administrator for FMLA.   As BellSouth's FMLA Administrator, ADP sends out forms to BellSouth employees seeking FMLA leave, reviews the forms to determine if the forms are appropriate, and sends out appropriate letters reflecting its decision on their applications for FMLA leave.   Effective January 1, 2003, BellSouth required employees to submit FMLA medical certification forms to ADP within 15 days of the first day of their FMLA request.[4]

The plaintiff was a member of the Communications Workers of America ("CWA") union.   The collective bargaining agreement between

---

[4] The 15 day requirement was not contained within BellSouth's "Attendance and Punctuality Guidelines."   Instead, BellSouth alerted its employees of the 15 day requirement by a posting on its internal website called NewsSource.   According to BellSouth's NewsSource website,

> Effective January 1, 2003, BellSouth will require employees to submit their FMLA medical certification forms within 15 days of the first day of their FMLA request.   Then, if an employee submits an incomplete form, he or she will be granted an additional 15-day period to correct and resubmit the appropriate forms.   No additional time will be granted after the 15-day correction period.

The plaintiff disputes that he ever saw the above NewsSource announcement.

3

the CWA and BellSouth, effective August 5, 2001, which governed the terms and conditions of the plaintiff's employment, provided:

> A counseling entry that has been on file for a period of six (6) months without any intervening disciplinary action pertaining to the same subject matter will be removed from the employee's personnel record. A warning entry will be removed after 24 months and all remaining entries will be removed after a period of 36 months subject to the preceding criteria. Any related data will also be removed with the entry from the personnel record and should not be taken into consideration in the future.

The record reflects that while a BellSouth employee the plaintiff had attendance and punctuality issues. On March 25, 2003, the plaintiff received a counseling entry for unsatisfactory attendance and punctuality. After the counseling entry, the plaintiff was absent from work for eight hours on April 21, 2003, for "home conditions" and was tardy on both May 1 and May 2 of 2003. On May 2, 2003, the plaintiff received a warning entry for unsatisfactory attendance and punctuality issues, was advised that immediate improvement was necessary, and was told that if immediate improvement did not take place, "further disciplinary action will be taken, up to and including dismissal." After the warning entry on May 2, 2003, the plaintiff had several absences and tardies. On March 3, 2004, the plaintiff was issued a letter in lieu of suspension regarding unsatisfactory attendance by his supervisor at the time, Charles Mbah. The letter in lieu of suspension advised the plaintiff, "Unless improvement to a satisfactory level is made and sustained over a reasonable period of time, your employment

4

with BellSouth will be terminated."

In July 2004, the plaintiff's immediate supervisor was Juanita Stallings.  Stallings reported to Bernice Hunter, who was the Operations Manager.   On July 2, 2004, the plaintiff went to Hunter's office and told Hunter that he was an alcoholic and a drug-user who was addicted to cocaine and that his life was falling apart.   Hunter immediately called a representative at EAP and explained the plaintiff's situation, gave the phone to the plaintiff, and left the office.   After discussing his situation with the EAP representative, the plaintiff handed the phone back to Hunter, and the plaintiff told Hunter that he had been referred to a drug rehabilitation program and that she should give him the telephone number of the office to call to apply for leave.[5]

There is a factual dispute in the record regarding whether the plaintiff ever received any forms from ADP regarding his FMLA leave.  BellSouth alleges that ADP sent the plaintiff the required forms to fill out.  The plaintiff alleges that he never received any paperwork from ADP in the mail.  Rather, the plaintiff alleges that the only paperwork he or his wife received regarding his FMLA claim was from BellSouth.  According to the plaintiff, he received a form by fax, which lacked a cover letter purporting to inform him

---

[5] In addition to giving the plaintiff the telephone number of the FMLA representative, Hunter instructed the plaintiff to let Stallings know where he was on Monday or whatever the next workday was since it was the Fourth of July holiday weekend.  The plaintiff testified that he called Stallings to report his absence.

that he had 15 days to return the FMLA application form.[6]
BellSouth has not submitted as an exhibit either a copy of the
cover letter it allegedly sent to the plaintiff or a copy of the
forms allegedly sent by ADP to the plaintiff.

At the time of the incident, Vickie Bennett was an
Administrative Assistant for Hunter who handled vacation and
attendance issues.  The plaintiff's wife called Bennett on Tuesday,
July 6, 2004, and said that the plaintiff was sick that day and
that he had been admitted into a drug rehabilitation facility.  On
July 7, 2004, Bennett called ADP, got an ADP case number, and told
the ADP that the plaintiff had been out of work for several days.
On July 9, 2004, Bennett faxed a FMLA application with the required
forms to the plaintiff's wife.  There is a factual dispute as to
whether the forms included a cover letter informing the plaintiff
that he had only 15 days to complete the application.[7]

_____

[6]BellSouth alleges that the fax sent to the plaintiff included
a cover letter which stated:

> Please return completed forms to the FMLA Administrator
> within 15 days of the date your need for FMLA was
> reported, not the date of this letter.  Failure to return
> completed FMLA forms within these 15 days may result in
> the denial or delay of your leave request.

However, BellSouth has not proffered with its submissions a copy of
the cover letter allegedly sent to the plaintiff.

[7] On this point, Bennett testified:

> Q: All right. So you faxed the stuff on the 9th.  What's
> the next thing that you did?
> A: Nothing else on the case other than this e-mail on the

The plaintiff returned to work on July 12, 2004, and admits that he was verbally informed by someone at BellSouth that he was supposed to fill out some FMLA paperwork. The plaintiff testified that he believed he needed to fill out the FMLA paperwork for

---

14th.
Q: All right. So between the 9th and the 14th you didn't talk to Richard or his wife or anything?
A: I don't recall talking to Richard and I don't really recall talking to his wife either. I think that was pretty much our conversation.
Q: So then the e-mail goes out on the 14th?
A: Uh-huh (affirmative).
Q: What's the next thing that happens, if anything?
A: With me?
Q: Yeah.
A: Nothing other than we receive a denial letter on his case.
Q: At any point, did you tell Richard he had 15 days to return the-
A: I don't recall, but I do know it's on the paperwork that I sent.
Q: What paperwork?
A: FMLA application.
Q: Well, you didn't actually see what the third-party administrator sent to Richard, did you?
A: Well, I know the-it's the same application that I faxed to them.
Q: I've got the application.
A: Ok.
Q: Or I think I do.
A: Okay.
Q: Two is three of the four pages of the application.
A: Okay.
Q: I don't see where it says you've got 15 days in that.
A: Okay.
Q: Is there something else?
A: There is an extra page.
Q: And describe that to me.
A: There is a page with some information on it--I can't verbally tell you exactly what it says on there.
Q: Do you know if you faxed that to Richard?
A: I can't recall if I faxed that one to him or not.

subsequent days of rehabilitation, not for his initial leave, i.e.,
for July 6-9, 2004.  On July 14, 2004, Bennett sent an email to the
plaintiff with information on his case.  The email stated: "You and
doctor need to answer the questions and sign the application, then
fax it to the number on the left of the application.  If you have
additional questions for FMLA, they can be reached at 800-528-
1244."  Hunter had asked Bennett to ensure that the plaintiff got
the paperwork that he needed to cover his time out.

At some point later in the month of July, Bennett informed
Hunter that the plaintiff had not gotten his paperwork in.
Thereafter, Hunter called a union representative.  In her
affidavit, Hunter stated that she told the union representative,
Annie Hardeman, that the plaintiff had not completed his required
FMLA application and medical certification form.  Furthermore,
Hunter asked for a union representative to come to the plaintiff's
work place to talk to the plaintiff regarding completing the
necessary paperwork.  Subsequently, another union representative,
Patricia Wells, came to the plaintiff's workplace and was allowed
to talk to the plaintiff concerning completing his FMLA paperwork.
According to the plaintiff's version of the conversation between
him and Wells at no point was he informed by the union
representative that he needed to submit FMLA paperwork for his
initial absence.  Moreover, the plaintiff alleges that he was never
informed in writing that he only had 15 days to submit the

8

paperwork for the initial absence.   Lastly, the plaintiff alleges that the meeting with the union representative occurred more than 15 days after his July 6-9, 2004, absence.

On August 4, 2004, the FMLA Administrator sent a letter to the plaintiff informing him that the FMLA leave had been denied for the period from July 6 to July 9, 2004, because "forms were not received within the allotted 15 day time frame."[8]   On August 5, 2004, the plaintiff's employment was terminated for unsatisfactory attendance and punctuality issues.   It is undisputed that the plaintiff's employment was terminated based solely upon the four days of absence from July 6 to July 9, 2004, for which BellSouth did not receive the necessary FMLA medical certification form and

─────────────────────

[8] On the issue of whether the plaintiff was ever given notice of the 15 day requirement to hand in his certification and other forms, Hunter testified:

Q: At any point, did you tell Richard that he had only 15 days to get the papers returned?
A: No.
Q: Do you know if anybody told him that?
A: No.
Q: Did you know that there was a deadline?
A: Yes.

Hunter continued:

A: There's a letter that goes with the--there's a package that goes to the employee, the person that's applying for FMLA, and it's in that paperwork.   Now, where it is in that paperwork, I can't tell you because I don't have it in front of me.
Q: You can't testify whether Richard ever received that or not, though, can you?
A: No, I couldn't.

completed FMLA application.   It is also undisputed that the plaintiff did not get the completed FMLA application to the FMLA Administrator until August 10, 2004, several days after his termination.

The plaintiff filed a grievance over his termination; however, the plaintiff's union did not take the matter to arbitration.   On December 28, 2004, the plaintiff filed a charge of discrimination with Equal Employment Opportunities Commission("EEOC") alleging that his termination was related to discrimination based on age and disability.   On March 10, 2005, the plaintiff filed a complaint alleging (1) his termination was the result of disability discrimination and (2) BellSouth had violated the FMLA.   With regard to the plaintiff's FMLA's claim, the plaintiff alleges that BellSouth violated the FMLA by interfering with his ability to obtain FMLA leave and that BellSouth improperly retaliated against him for applying for FMLA leave.   On January 9, 2006, BellSouth filed a motion for summary judgment.   In his response brief, the plaintiff voluntarily dismissed his claims based on disability discrimination.   Therefore, the court addresses only the plaintiff's FMLA claims.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his or her on which he or she bears the ultimate burden of proof. Id. at 322-23. Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322.

### III. Legal Analysis
### of Plaintiff's FMLA Claims

The FMLA entitles an "eligible employee . . . to a total of 12 workweeks of leave during any 12 month period," *inter alia*, "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The Act defines a "serious health condition" as "an illness, injury, impairment, or physical or

11

mental condition that involves . . . inpatient care in a hospital, hospice, or residential medical care facility" or "continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(A)-(B). Leave taken in relation to a serious health condition may be taken intermittently or on a reduced leave schedule when medically necessary. 29 U.S.C. § 2612(b)(1).  An employer may require that such a request for leave be supported by a certification issued by the health care provider of the employee or family member who suffers from the serious health condition. 29 U.S.C. § 2613(a). The Act also specifies what information must be included in the certification for it to be considered sufficient. 29 U.S.C. § 2613(b).  Furthermore, where an eligible employee takes leave under 29 U.S.C. § 2612, that employee is entitled, upon return from leave, to be restored to the position he held when the leave began, or to an equivalent position with equivalent benefits, pay, and terms and conditions of employment. 29 U.S.C. § 2614(1).

The FMLA "also protects employees from being discriminated against by their employers for exercising or attempting to exercise the rights it provides," and employers are prohibited from discriminating against employees who have used FMLA leave. Brungart v. Bellsouth Telecomm., Inc., 231 F.3d 791, 798 (11th Cir. 2000).

The FMLA creates two types of claims:

interference claims, in which an employee asserts that his employer denied or otherwise interfered with his

substantive rights under the Act, *see* 29 U.S.C. §
2615(a)(1), retaliation claims, in which an employee
asserts that his employer discriminated against him
because he engaged in activity protected by the Act, *see*
29 U.S.C. § 2615(a)(1)-(2).

Strickland v. Water Works & Sewer Bd. of the City of Birmingham,

239 F.3d 1199, 1206 (11th Cir.2001). To state an interference

claim, "an employee need only demonstrate by a preponderance of the

evidence that he was entitled to the benefit denied." Id. at 1206-

07. The employee does not have to make allegations regarding his

employer's motives or intentions; he need only demonstrate that he

was entitled to, but was denied, the right in question. Id. at

1208.

In contrast, to state a claim for FMLA retaliation, the

employee "must demonstrate that his employer intentionally

discriminated against him in the form of an adverse employment

action for having exercised an FMLA right." Strickland, 239 F.3d at

1207. Therefore, the employee bears the increased burden of

demonstrating that the employer's actions were motivated by an

impermissible animus. Id. When evaluating claims of retaliation

under the FMLA, absent direct evidence of discrimination, courts

apply the burden shifting framework established by the Supreme

Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), for

evaluating Title VII discrimination claims. Id. To establish a

*prima facie* claim of retaliation, the plaintiff must show that: (1)

he was engaged in statutorily protected conduct; (2) he suffered an

adverse employment action;[9] and (3) that there is a casual connection between the protected conduct and the adverse employment action.[10] Brungart, 231 F.3d at 798.

Once the plaintiff claiming retaliation establishes a *prima facie* case, a presumption of discrimination is created. The burden then shifts to the defendant "to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999). (internal citation and quotation omitted.)   "If the defendant offers legitimate reasons, the presumption of retaliation disappears.   The plaintiff must then show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct." Id.   The plaintiff may do so either by "persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981).

---

[9] An "adverse employment action" is any ultimate employment decision, such as a discharge "or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." See Gupta v. Fla. Bd. Of Regents, 212 F.3d 571, 587 (11th Cir. 2000).

[10] "To establish the causal connection element, a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." See Brungart, 231 F.3d at 799 (internal citations and quotations omitted).

The plaintiff's claims under the FMLA fall into two categories: first, that BellSouth interfered with his right to take protected leave under FMLA; and, second, he was terminated in retaliation for taking or for applying for FMLA leave. The court will now address each of the plaintiff's FMLA claims in turn.

### A) FMLA Interference Claim

To state a claim of interference under FMLA, an employee need only demonstrate by a preponderance of the evidence that he is entitled to the benefit denied; no additional showing is required. Strickland, 239 F.3d at 1206-1207. In Strickland, the Eleventh Circuit held that if an employee is entitled to FMLA leave and it is denied by the employer, even mistakenly, the fired employee is entitled to reinstatement.

In this case, the only defense asserted by BellSouth to the plaintiff's FMLA interference claim is that the plaintiff was not entitled to the FMLA leave because he failed to turn in his FMLA forms within 15 days of the date of his initial absences on July 6-9, 2004. In response, the plaintiff asserts that BellSouth could not require him to return his FMLA forms within 15 days because he was never informed of the 15 day limitation in writing or otherwise. The plaintiff argues, "[E]ven if it mistakenly failed to inform [the plaintiff] of the 15 day limitation, it has interfered with his FMLA rights." The plaintiff continued, "That is, while the regulations interpreting the FMLA do authorize an

15

employer to impose no less than a 15 day limitation for the return
of FMLA forms, in the least, the employee must be informed of this
requirement before FMLA leave can be denied to the employee."

BellSouth does not dispute that the plaintiff's request for
FMLA leave was unforeseeable.  Therefore, the relevant regulation
at issue in this case is 29 C.F.R. § 825.311(b) which provides:

> When the need for leave is not foreseeable, or in the
> case of recertification, an employee must provide
> certification (or recertification) within the time frame
> requested by the employer (which must allow at least 15
> day after the employee's request) or as soon as
> reasonably possible under the particular facts and
> circumstances.  In the case of a medical emergency, it
> may not be practical for an employee to provide the
> required certification within 15 calendar days.  If an
> employee fails to provide a medical certification within
> a reasonable time under the pertinent circumstances, the
> employer may delay the employee's continuation of FMLA
> leave.  If the employee never produces the certification,
> the leave is not FMLA leave.

In this case, it is also undisputed that the plaintiff failed
to submit a complete and proper application and medical
certification for FMLA leave within the 15 days as required by
BellSouth's internal policy.  Furthermore, it is undisputed that
the plaintiff did not submit his FMLA certification forms until
several days after he was terminated by BellSouth.  Lastly, the
parties do not dispute that the plaintiff was provided with at
least several verbal reminders to fill such forms out by both
BellSouth employees and by a union representative.

In response, the plaintiff argues:

BellSouth never stated a time frame to [the plaintiff]

16

within which the certification must have been returned. Viewed in a light most favorable to [the plaintiff], BellSouth never informed [the plaintiff] that he only had 15 days in which to return the medical certification. BellSouth has produced no document provided to [the plaintiff] which contained the 15 day limitation. [The plaintiff] denied that anyone ever informed him of a 15 day limitation. Furthermore, for that matter, the record is absent of any evidence whatsoever that the employer informed [the plaintiff] of a "time frame" whatsover.

Furthermore, the plaintiff argues:

[A]ll of the evidence upon which BellSouth relies in asserting that the 15 day requirement was communicated to [the plaintiff] is disputed evidence in this case. [The plaintiff] has denied in his affidavit that he ever even read a NewSource article. He denies that he read the issue in question here. He also testified that he was never informed that he should look to NewSource as a means of learning Company policies or procedures. Further, as to the cover letter on the FMLA forms, both Bodrick and his wife have denied receipt of the cover letter. BellSouth and ADP have not produced a copy of any cover letter so informing [the plaintiff]. They have not testified that anyone ever even told him of a 15 day limitation or any "time period" whatsoever. And, with respect to [the plaintiff's] meeting with the Union official, that occurred after the 15 day period had already expired. Furthermore, even if it occurred within the 15 day period it was insufficient according to the regulations. 29 C.F.R. § 825.305(a) requires that the notification that a certification within a "time frame" is required by the employee must be in writing. No such writing exists in this case.

The court agrees that 29 C.F.R. § 825.305(a)-(d) governs the resolution of this case. It is telling that BellSouth fails to address 29 C.F.R. § 825.305(a)-(d), or, for that matter, any applicable Regulation, in its brief in support of its motion for summary judgment or its reply brief.

17

29 C.F.R. § 825.305(a)-(d) provides:

(a) An employer may require that an employee's leave to care for the employee's seriously-ill spouse, son, daughter, or parent, or due to the employee's own serious health condition that makes the employee unable to perform one or more of the essential functions of the employee's position, be supported by a certification issued by the health care provider of the employee or the employee's ill family member.   An employer must give notice of a requirement for medical certification each time a certification is required; such notice must be written notice whenever required by § 825.301.     An employer's oral request to an employee to furnish any subsequent medical certification is sufficient.

(b) When the leave is foreseeable and at least 30 days notice has been provided, the employee should provide the medical certification before the leave begins.   When this is not possible, the employee must provide the requested certification to the employer within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts.

(c) In most cases, the employer should request that an employee furnish certification from a health care provider at the time the employee gives notice of the need for leave or within two business days thereafter, or, in the case of unforeseen leave, within two business days after the leave commences.   The employer may request certification at some later date if the employer later has reason to question the appropriateness of the leave or its duration.

(d) At the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification.     The employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency.

Several key relevant facts are in dispute in this case.

Specifically, whether the plaintiff was ever informed in writing

18

that he had only 15 days to return his FMLA medical certification form is disputed.  Moreover, there is a dispute as to whether the plaintiff was ever informed of the potential consequences for his failure to hand in the required medical certification and application forms.  Therefore, summary judgment on the plaintiff's FMLA interference claim is not appropriate.  A jury should be allowed to determine whether the plaintiff was ever placed on written notice that he only had 15 days to return the FMLA forms. Therefore, BellSouth's motion for summary judgment with regard to the plaintiff's FMLA interference claim is denied.

### B. FMLA Retaliation Claim

In order to state a claim of FMLA retaliation, an employee must allege that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. Parris v. Miami Herald Publ'g Co., 216 F.3d 1298, 1301 (11th Cir. 2000). "Unlike an interference claim, a plaintiff who asserts a retaliation claim must prove that the employer acted with the requisite intent to retaliate." Johnson v. Morehouse College, Inc., 199 F.Supp.2d 1345, 1359 (N.D. Ga. 2001).

BellSouth asserts that the plaintiff cannot state a case of retaliation because "it is not clear" that the plaintiff engaged in statutorily protected activity.  The record clearly reflects that the plaintiff was attempting to take FMLA leave and, as such,

engaged in an activity protected by the FMLA.

With regard to the casual requirement, BellSouth argues that the plaintiff

> cannot meet the third element of a retaliation claim because he cannot show that the termination of his employment was causally related to any protected activity. The record in this case shows that [the plaintiff] was terminated for unsatisfactory attendance and punctuality.

However, BellSouth's arguments on the causation prong of proving a *prima facie* case of FMLA retaliation misses the mark. BellSouth is merging its legitimate, non-discriminatory reason for the plaintiff's termination with the causation element of a *prima facie* case of a retaliation claim.   To survive summary judgment, the employee must show only that "the protected activity and the adverse action were not wholly unrelated." Norman v. Southern Guar. Ins. Co., 191 F. Supp.2d 1321, 1332 (M.D. Ala. 2002), citing Clover v. Total Sys. Servs. Inc., 176 F.3d 1346, 1354 (11th Cir. 1999). This burden of causation may be met by showing that the employer gained knowledge of the employee's protected conduct at a point temporally proximate to the adverse action. Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001).[11]   In this case, the plaintiff easily meets this standard.  Specifically, the evidence

_____

[11]In addition, temporal proximity between the protected conduct and the adverse-employment action can be sufficient circumstantial evidence of causation to allow the retaliation claim to proceed to the jury, unless there is undisputed proof that the employer had no knowledge of the protected activity at the time the decision was made. Brungart, 231 F.3d at 799.

in the record demonstrates that decision-makers at BellSouth involved in the plaintiff's termination had knowledge of his protected activity, i.e., his attempt to take FMLA leave, when they terminated his employment.    Therefore, the plaintiff has established a *prima facie* case of retaliation.

BellSouth asserts that the plaintiff's non-compliance with its attendance policies provides it with a legitimate reason for terminating the plaintiff.  This showing meets BellSouth's burden of proffering a legitimate, nondiscriminatory reason for the plaintiff's termination.   Since BellSouth has proffered a legitimate reason for the plaintiff's termination, the burden shifts back to the plaintiff to show that the proffered reason for his termination is a pretext for FMLA retaliation.  On the issue of pretext, the court concludes the plaintiff has not presented any evidence suggesting that BellSouth's asserted reason for terminating the plaintiff's employment--i.e., his violation of the attendance policy--was not the true reason for his discharge. Furthermore, there is nothing in the record suggesting that BellSouth harbored a secret motive to deny the plaintiff's FMLA rights or that BellSouth intended to retaliate against him for the assertion of his FMLA rights. To the contrary, the record reflects that it was one of the plaintiff's supervisors who had verbally informed the plaintiff that he had to fill out forms to obtain FMLA leave.    Furthermore, representatives from BellSouth made

21

arrangements for the plaintiff to meet with a union representative to discuss filling out the necessary paperwork.    Based on the record before the court, no reasonable juror could conclude that BellSouth's legitimate, non-retaliatory reason for the plaintiff's termination was a pretext for unlawful FMLA retaliation. Therefore, BellSouth's motion for summary judgment on the plaintiff's claim for FMLA retaliation is granted.[12]

### IV. Conclusion

For the foregoing reasons, BellSouth's motion for summary judgment [Doc. No. 27] is **DENIED** with respect to the plaintiff's claim for interference under the FMLA and is **GRANTED** with respect to the plaintiff's claim for retaliation under the FMLA.    The parties are directed to submit a proposed consolidated pretrial order within 30 days from the date of the docketing of this order.


SO ORDERED, this 1st day of March, 2006.


ROBERT L. VINING, JR.
Senior United States District Judge


---

[12] The court's denial of summary judgment with respect to the plaintiff's FMLA interference claim is not inconsistent with its grant of summary judgment with respect to the plaintiff's FMLA retaliation claim.    The intent necessary to demonstrate retaliation is not required to show interference with a right under the FMLA.